Commonwealth of MASSACHUSETTS by its DIVISION OF MARINE FISHERIES, and State of New Hampshire, by its Fish & Game Department, Division of Marine Fisheries, Plaintiffs

v.

Carlos M. GUTIERREZ, in his official capacity as Secretary of Commerce of the United States, et al., Defendants.

Civil Action No. 06–12110–EFH.

United States District Court, D. Massachusetts.

Jan. 26, 2009.

Order Granting Motion to Amend in Part Feb. 17, 2009.

Christine A. Baily, Massachusetts Attorney General's Office, Daniel J. Hammond, Attorney General's Office, Peter Shelley, Conservation Law Foundation, Boston, MA, Peter C.L. Roth, Office of the Attorney General, State of New Hampshire, Concord, NH, for plaintiffs.

Kristen Byrnes Floom, U.S. Department of Justice, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

*Background*

The plaintiffs, the Commonwealth of Massachusetts Division of Fisheries, and the State of New Hampshire Department of Fish & Game, Division of Marine Fisheries (the "States") filed this suit against the Secretary of the United States Department of Commerce ("Commerce"), the defendant. The States seek to vacate the promulgation of Framework 42, a regulation approved by Commerce on October 23, 2006.

Commerce adopted Framework 42 upon endorsement by the National Marine Fisheries Service ("NMFS"), a division of Commerce charged with regulating the nation's fisheries. The regulations that NMFS endorses are proposed to NMFS by fishery management councils. These fishery management councils are regulatory bodies operating under the supervision of NMFS. The chain of command over fisheries starts with Commerce at the top, which is followed by NMFS in the middle, which in

turn is followed by the fishery management councils at the bottom. In the case of Framework 42, the council involved was the New England Fishery Management Council (the "Council").[1] The nation's fisheries are regulated pursuant to the Magnuson–Stevens Fishery Conservation and Management Act (the "MSA"), 16 U.S.C. § 1851 *et seq.*

Framework 42 was enacted to prevent overfishing of certain cod and flounder stocks. The relief requested by the States is based on the Administrative Procedure Act, which authorizes the court to set aside an agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A) (2008). The States, objecting to Framework 42's restriction on fishermen's government allotted days at sea ("DAS"), claim that Framework 42 is arbitrary and capricious. Framework 42 subtracts two (2) hours from a given DAS allotment for each hour a fisherman fishes in the inshore portion of the Gulf of Maine.

*Analysis*

The States have requested summary judgment as to Counts II and III of their petition and the court rules on both of these counts. Commerce has cross-moved for summary judgment as to all eight (8) counts of the petition. On Commerce's cross-motion for summary judgment, the court rules only as to Counts II and III. The court declines to rule as to Counts I, IV, V, VI, VII and VIII, as these counts were neither adequately briefed nor orally argued. Oral Argument on said motions was heard on December 8, 2008. Count II of the petition alleges that Framework 42 fails to comply with the MSA's requirement under National Standard I ("Standard I") to achieve optimum yield, while Count III alleges that Framework 42 fails to comply with the requirement under National Standard II ("Standard II") that it be based on the best scientific information available.

 The court first addresses Count II. Count II relates to Standard I, which requires that Commerce, in approving a regulation, assure that the nation's fisheries achieve "optimum yield." Optimum yield is defined by weighing several different factors, including food production, recreational opportunities and overfishing concerns. In addition to the Standards, Congress also requires Commerce to have its own agency-designated guidelines for fisheries conservation. One of these National Standards Guidelines (the "Guidelines") is at issue in this case. The so-called "Mixed–Stock Exception" allows for overfishing of one stock in a multispecies fishery in order to permit harvest of another species at its optimum level.

The States' claim in Count II relates to the Mixed–Stock Exception. The States move for summary judgment on the basis that Commerce did not "seriously consider and analyze" the Mixed–Stock Exception in promulgating Framework 42. Commerce admits that it did not seriously consider and analyze the Mixed–Stock Exception, but counters that the Guidelines are merely advisory and they do not have the force of law.

 The court denies the States' Motion for Summary Judgment as to Count II and, at this time, denies Commerce's Cross–Motion for Summary Judgment as to Count II. In its discretion, the court directs Commerce to seriously consider and analyze the Mixed–Stock Exception with respect to Framework 42. The court

---

**1.** Commerce, NMFS and the Council all contributed to Framework 42. Nevertheless, the court limits its analysis to Commerce. It is the defendant in this suit and it holds ultimate authority over Framework 42.

agrees with Commerce that the Guidelines are advisory and are not subject to judicial review. The statute makes this clear on its face. "The Secretary shall establish advisory guidelines (which shall not have the force and effect of law), based on the national standards, to assist in the development of fishery management plans." 16 U.S.C. § 1851(b) (2008).

Notwithstanding this limitation, the court also believes that prudent agency administration dictates that Commerce at least seriously consider and analyze the Mixed–Stock Exception, which Commerce admits that it did not do.[2] Its reasons are time constraints and the unlikelihood that the exception would apply even after serious consideration and analysis. Such reasons are without merit. At the least, administrative agencies are to be expected to approach their work carefully and thoroughly. This means taking their time before making decisions affecting society, especially those of great consequence, such as Framework 42. Furthermore, the Guidelines cannot amount to only window dressing. By including the Guidelines in the statute, Congress wanted to assure that detailed analysis underlies the work of Commerce. Taking Commerce's reasoning would remove from the regulatory process such necessary analysis and instead allow agencies to operate on assumptions. Commerce must seriously consider and analyze the Mixed–Stock Exception, for otherwise, it would be as if the Guidelines were without being, purpose or utility.[3] Therefore, the court temporarily suspends Framework 42 pending serious consideration and analysis of the Mixed–Stock Exception by Commerce. This review process shall be completed no later than sixty (60) days from the date of this order, on which date, or sooner, Commerce shall file a report of its findings with the court.

■ Second, the court addresses Count III. Count III alleges that Framework 42 is not based on the "best scientific information available," as required by Standard II. 16 U.S.C. § 1851(a)(2) (2008). More specifically, the States argue that the Closed Area Model (the "CAM"), the scientific evidence used by Commerce in promulgating Framework 42, was not the best scientific information available (the "Best Science"). The court considers three (3) elements of Best Science in rendering its decision.

■ First, the court gives great deference to Commerce in reviewing Commerce's determination of the Best Science. *Mass. v. Daley*, 10 F.Supp.2d 74, 77 (D.Mass.1998), *aff'd*, 170 F.3d 23 (1st Cir. 1999). In reviewing any agency action, courts afford agencies great deference. *Associated Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir.1997). This deference is heightened in cases requiring special expertise such as science. *Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 103, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). Deference appears to have even found its way into the language of the statute here. The inclusion of "available" into the definition of Best Science shows that determining the science to be relied on is not a matter of absolutes, but instead is a matter of

---

**2.** During oral argument, Commerce stated that it did consider the Mixed–Stock Exception, but that it did not seriously consider and analyze the exception. This distinction troubles the court; Commerce should give serious consideration to all of its work. Such a distinction indicates to the court that Commerce

did not genuinely review the Mixed–Stock Exception before endorsing Framework 42.

**3.** The court is not stating that Commerce must in fact employ the mixed-stock exception, but rather that Commerce should review it carefully.

judgment. This subjective approach leads the court to defer to the agency's judgment. Commerce enjoys great independence in determining what qualifies as Best Science. 16 U.S.C. § 1851(a)(2) (2008). Indeed, Best Science has been interpreted so broadly as to allow Commerce to use incomplete information as the basis for a regulation. *Daley,* 10 F.Supp.2d at 77.

▆▆▆▆ Related to this first factor, second, courts apparently overturn regulations under Standard II in those very limited circumstances in which Commerce completely fails to consider science. *See e.g., Hall v. Evans,* 165 F.Supp.2d 114, 134 (D.R.I.2001); *Parravano v. Babbitt,* 837 F.Supp. 1034, 1046 (N.D.Cal.1993), *aff'd,* 70 F.3d 539 (9th Cir.1995). Third, any party objecting to Commerce's science as the Best Science must introduce "better" science. A party cannot expect relief without providing science to counter what Commerce identifies as Best Science. *Or. Trollers Ass'n v. Gutierrez,* 452 F.3d 1104, 1119–20 (9th Cir.2006); *Mass. v. Daley,* 170 F.3d 23, 30 (1st Cir.1999).

▆▆▆ The court denies the States' Motion for Summary Judgment as to Count III and allows Commerce's Cross–Motion for Summary Judgment as to Count III. This ruling is based on the three elements of Best Science discussed. First, the administrative record contains an analysis of the CAM. Therefore, Commerce had a scientific basis for Framework 42. This analysis is identified as "draft," but using the court's broad, deferential standard, this still qualifies as Best Science. Best Science can be incomplete, so long as it is all that is available. *Daley,* 10 F.Supp.2d at 77.

Second, and relatedly, unlike cases in which the court has found Commerce in violation of Standard II, the draft analysis demonstrates that there is adequate support in the administrative record for Framework 42. Third, the court denies summary judgment because the States failed to present any alternative science. For a party to successfully object to the science used by Commerce under the Best Science standard, that party itself must present science that is "better." *Mass.,* 170 F.3d at 30. The administrative records lacks any such counter-science by the States.

In sum, the court denies the Motion for Summary Judgment as to Count III and allows the Cross–Motion for Summary Judgment as to Count III; Commerce included the basis for using the CAM in the administrative record and the States failed to present any contrary science to dispute the CAM.

*Decision*

Plaintiffs' Motion for Summary Judgment (Docket No. 21) is DENIED. Defendant's Cross–Motion for Summary Judgment (Docket No. 28) is DENIED, at this time, as to Count II, and ALLOWED as to Count III.

The court temporarily suspends Framework 42 pending serious consideration and analysis of the Mixed–Stock Exception by Defendant. This review process shall be completed no later than sixty (60) days from the date of this order, on which date, or sooner, Commerce shall file a report of its findings with the court.[4]

The Defendant's Cross–Motion for Summary Judgment (Docket No. 28) as to Counts I, IV, V, VI, VII and VIII were neither adequately briefed nor orally ar-

---

4. The New England Fishery Management Council shall conduct this review process un- der the supervision of NMFS and Commerce.

 

gued and thus the court declines to rule thereon. The court stays action on said counts pending serious consideration and analysis of the Mixed–Stock Exception by Commerce.

SO ORDERED.

## *ORDER*

Federal Defendants' Motion to Alter or Amend the Court's Order (Docket No. 39) is granted in part. The court issued a Memorandum and Order on January 26, 2009 temporarily suspending Framework 42 on the ground that the Federal Defendants ("Commerce") promulgated Framework 42 without seriously considering and analyzing the Mixed–Stock Exception Guideline. *Mass. v. Gutierrez,* No. 06–12110–EFH, 2009 WL 161232 (D.Mass. Jan.26, 2009). Commerce had sixty (60) days to seriously consider and analyze the Mixed–Stock Exception, and the suspension was effective pending compliance with such order.

Commerce's failure to seriously consider and analyze a Guideline, namely the Mixed–Stock Exception, prior to promulgating Framework 42 must have consequences. Such a failure might have resulted in a flawed Framework, which is why the court directed Commerce to demonstrate that it has seriously considered and analyzed the Mixed–Stock Exception as to Framework 42.

The court understands that Commerce's failure to seriously consider and analyze the Mixed–Stock Exception primarily impacts the 2:1 Days at Sea ("DAS") counting system. Therefore, Federal Defendants' Motion to Alter or Amend the Court's Order (Docket No. 39) is GRANTED IN PART as follows:

1. Framework 42 is hereby reinstated *except* for those provisions relating to the 2:1 DAS counting system, which remain suspended for thirty-eight (38) days from the date of this order.

2. The Deadline for DAS Leasing is extended by thirty (30) days pursuant to the recommendation contained in the State Plaintiffs' Opposition to Federal Defendants' Motion Filed under Fed.R.Civ.P. 59(e) (Docket No. 44).

SO ORDERED.